UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEVIN ELIEL AGUIRRE SOLIS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>KRISTI NOEM, *et al.*,<br><br>　　　　Respondents. | Case No. 2:26-cv-00053-RFB-EJY<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS** |

Before the Court is Petitioner Kevin Eliel Aguirre Solis's Verified Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center ("NSDC") in the custody of Federal Respondents (ECF No. 1). Also pending are Petitioner's Motion for Temporary Restraining Order (ECF No. 2) and motion to expedite the resolution of the Petition and/or Motion (ECF No. 16). For the following reasons, the Court grants the Petition and dismisses the pending Motions as moot.

**I.　　INTRODUCTION**

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act ("INA") to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal

---

[1] This Court has already granted habeas petitioners relief—both preliminary and on the merits—in well over sixty similar challenges and counting. See Jacobo-Ramirez v. Noem. 2:25-CV-02136-RFB-MDC, 2026 WL 310090, at \*1 n. 1 (D. Nev. Feb. 5, 2026).

proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatory, no matter how long a noncitizen has resided in the country and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals ("BIA") issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. See id.

This Court has already considered the government's new statutory interpretation and found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful.") A nationwide class has also been certified and a final declaratory judgment issued to all class members, holding that their detention without a bond hearing is unlawful. See Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's New Detention Policy Targets Millions of Immigrants. Judges keep saying its illegal., POLITICO (Sept. 20, 2025, at 4:00 p.m. EDT), https://perma.cc/L686-E97L.

1   An email leaked to the public shows that Executive Office of Immigration Review ("EOIR") Chief
2   Immigration Judge Teresa L. Riley issued nationwide guidance on January 13, 2026, instructing
3   immigration judges to continue to follow Hurtado as binding precedent despite the class-wide
4   declaratory judgment.[4] As a result, unlawfully detained noncitizens must continue to file individual
5   habeas petitions to obtain relief.

As of writing, Petitioner has been detained for nearly eight months without the opportunity for release on bond at NSDC, pursuant to this new detention policy. He asserts that his detention and the application of § 1225(b)(2) to him is unlawful under the INA and that his continued detention violates his due process rights. He seeks a writ of habeas corpus requiring that he be immediately released from detention, or, in the alternative, promptly afforded a bond hearing before an immigration judge pursuant to § 1226(a). Respondents concede that "the material facts relevant to the statutory-authority question are not meaningfully distinguishable from those presented" in this Court's previous decisions finding the government's detention policy unlawful. See ECF No. 15. For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under the INA and the Due Process Clause of the Fifth Amendment.[5] The Court thus grants the Petition and orders Respondents to immediately release him from detention on his own recognizance.

## II. PROCEDURAL HISTORY

On January 26, 2026, Petitioner filed the Verified Petition Writ of Habeas Corpus, challenging his prolonged detention at NSDC. See ECF No. 1. On January 23, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO"). See ECF No. 2. The case was twice reassigned to due to recusals. See ECF Nos. 3, 7. On January 30, 2026, the Court entered an order directing service of the Petition and setting a briefing schedule. See ECF No. 9. On February 6, 2026, Respondents filed their consolidated response to the Petition and Motion for TRO. See ECF

---

[4] See Practice Alert: EOIR Issues Nationwide Guidance on Maldonado Bautista, AILA Doc. No. 26011404 (Jan. 16, 2026), https://perma.cc/AN3A-7LX3.

[5] In addition to this Court's own analysis, the Court also recognizes that Petitioner is a member of the class certified in Bautista v. Santacruz, 2025 WL 3678485, and is thus entitled to relief enforcing the class wide declaratory judgment which held that Respondents' detention of class members like Petitioner without a bond hearing under § 1225(b)(2)(A) is unlawful.

No. 14. On February 8, 2026, Petitioner filed his reply. See ECF No. 15. On February 8, 2026, Petitioner filed his Motion to Expedite. See ECF NO. 16. The Court's Order follows.

### III. STANDARD OF REVIEW

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. CONST., art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting THE FEDERALIST NO. 84 (Alexander Hamilton)). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention"). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Young v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—*i.e.*, to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since

habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). "Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Harris, 394 U.S. at 300. Similarly, the certified, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See Carlson, 186 F.2d at 188. Importantly, however, a detained habeas petitioner should "not be burdened by the impossible task of imagining and refuting [the] causes" of his detention. See id. As the Supreme Court "has emphasized, taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas corpus proceeding must not be allowed to founder in a procedural morass." Harris, 394 U.S. at 291–92 (citation and quotation marks omitted).

## IV.  BACKGROUND

### A. Legal Background

By reference, the Court fully incorporates: the legal background regarding the government's detention authority and removal proceedings under the INA; the Court's findings regarding government's new statutory reading and mass detention policy; and the Court's findings regarding the government's practices in enforcing that policy through the Las Vegas Immigration Court, as set forth in its ruling in Escobar Salgado. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY, 2025 WL 3205356, at *2–6 (D. Nev. Nov. 17, 2025).

### B. Petitioner Aguirre Solis

The Court makes the following findings of fact as to Petitioner Aguirre Solis based on the Verified Petition and its attachments, including Petitioner's November 13, 2025, and January 2, 2026 declarations, and attached DHS and immigration court documents relevant to Petitioner's detention and ongoing removal proceedings. See ECF Nos. 1, 1-2. Respondents do not dispute the factual assertions in the Petition nor submit any additional evidence. See ECF No. 14.

1        Mr. Aguirre Solis is a 29-year-old citizen of Nicaragua who entered the United States on July
2   28, 2020, without inspection after fleeing political persecution and torture by Nicaraguan
3   authorities. See ECF No. 1 at 2. He was persecuted and tortured by authorities in Nicaragua, based
4   on his participation in widespread peaceful protests regarding the government's announced
5   changes to the national pension system in April 2018. Id. at 8-9. During his five years living in the
6   U.S., he maintained a clean criminal record, beyond a parking ticket on July 23, 2022, and a
7   speeding ticket on January 16, 2025. Id. at 9. His partner similarly fled Nicaragua due to
8   persecution and was later granted asylum in the U.S. Id. The two planned to marry before he was
9   detained. Id.
10       Because of the torture he experienced in Nicaragua, Petitioner suffers from severe anxiety,
11  depression, insomnia, flashbacks and other trauma-related symptoms. Id. Discussing his
12  experience triggers intense physiological reactions, including shaking, sweating, and an inability
13  to speak. Id. These symptoms prevented him from filing for asylum within one year of entry. Id.
14       In June of 2025, the North Las Vegas police pulled Petitioner over while he was driving. Id.
15  He was accused of driving under the influence because he was shaking and sweating, a reaction
16  that is triggered whenever he sees police due to his prior torture by Nicaraguan authorities. Id. He
17  was charged with four misdemeanors for driving under the influence, headlamps not illuminated,
18  failure to yield to an emergency vehicle, and failure to provide proof of insurance. Id. He attended
19  his arraignment and paid $3,800 to be released on bond, but he was never released—instead he
20  was taken into ICE custody on June 15, 2025. Id. at 10. He has not been convicted and the charges
21  remain pending. Id.
22       ICE *knowingly and unlawfully* commenced expedited removal proceedings against
23  Petitioner, despite his five years of presence in the United States. Id. ICE stated on the I-213
24  "Record of Deportable/Inadmissible Alien" that it had "processed AGUIRRE-SOLIS as a Notice
25  and Order of Expedited Removal." See ECF No. 1-2 at 13. Yet in the charging document that
26  initiated removal proceedings, ICE stated that Petitioner entered the United States in 2020. Id. at
27  29. The INA and its enacting regulations prohibit expedited removal of noncitizens who have been

physically present in the United States continuously for two years. See 8 U.S.C. § 1225(b)(1)(A)(i), (ii); United States v. De La Mora-Cobian, 18 F.4th 1141, 1146, n. 1 (9th Cir. 2021).

Petitioner attempted to seek a custody redetermination (*i.e.* bond hearing) before the Las Vegas Immigration Court, which immigration judge (IJ) Lindsy Roberts denied on August 15, 2025. See ECF No. 1-2 at 33. IJ Roberts apparently relied upon ICE's representation that Petitioner was in expedited removal proceedings, despite ICE's simultaneous acknowledgement that he entered the country in 2020. Id. In declining to consider Petitioner's eligibility for release on bond, IJ Roberts relied on Matter of M-S-, 27 I&N 509 (A.G. 2019), an administrative decision by the Attorney General concerning asylum-seekers who are transferred from expedited removal to full removal proceedings, which held that such asylum-seekers are subject to mandatory detention under 8 U.S.C. § 1225(b)(1). Id.

On November 20, 2024, IJ Roberts held an individual merits hearing on Petitioner's removability. Id. at 19; ECF No. 14-3. IJ Roberts granted Petitioner withholding of removal based on the serious risk of harm Petitioner faces if returned to Nicaragua, but denied asylum, solely based on Petitioner's failure to apply within one year of entering the country. Id. Petitioner timely filed an appeal of the denial of asylum based on the legal question of whether Petitioner's mental health issues justify an exception to the one-year filing deadline. ECF No. 1-2 at 22-25. ICE did not appeal the grant of withholding of removal. ECF No. 1 at 10-11. Because Petitioner's appeal remains pending, there is no final order of removal as to Petitioner, and Respondents lack authority to execute removal. See 8 C.F.R. § 1241.1; see also Lopez-Angel v. Barr, 952 F.3d 1045, 1049 (9th Cir. 2019) ("The statutory right [to appeal an immigration judge's removal decision] would be undermined if the government could simply terminate an appeal by removing a petitioner.")

On December 30, 2025, at about 2 a.m., ICE transferred Petitioner out of NSDC to a building in Las Vegas without notice to his counsel or his family. ECF No. 1 at 11. When Petitioner asked to contact his attorneys, he was denied the ability to do so. Id. He was told that he would be removed "back to Mexico," which is not his home country. Id. Around 11 a.m. the same day, two ICE agents handed Petitioner documents that he could not understand. Id. When he asked for clarification and to contact his attorneys, the ICE agents denied him the ability to contact his

1  attorneys, grabbed his hand, and forced him to sign the document. Id. Petitioner was then flown
2  from Las Vegas to an ICE facility in Arizona, where he was left in a freezing cold room overnight
3  with an aluminum blanket. Id. On December 31, 2025, Respondents attempted to remove
4  Petitioner to Texas and then to Mexico. Id. When Petitioner's counsel finally learned of the
5  transfer, he sent multiple emails to the ICE Office of the Principal Legal Advisor. Id.; ECF No. 1-
6  2 at 36. On January 1, 2026, Petitioner was transferred back to NSDC. ECF No. 1 at 11.
7  Respondents' attempts to illegally remove Petitioner caused him extreme emotional distress. Id. at
8  11-12.

## V.    DISCUSSION

### A.  Jurisdiction

The Court has already found it has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply; the Court fully incorporates by reference its prior findings on this point. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, No. 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (D. Nev. Nov. 19, 2025); Posada v. Noem, No. 2:26-cv-00050-RFB-BNW, 2026 WL 194715, at *2-3 (D. Nev. Jan. 26, 2026).

### B.  Exhaustion

The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

### C.  Statutory Question

The only statutory basis Respondents assert for continuing to detain Petitioner without a bond hearing is 8 U.S.C. § 1225(b)(2)(A). Petitioner entered the United States in 2020 and was arrested and detained by ICE in Las Vegas five years later, far from any border or port of entry. This Court fully incorporates by reference its previous holding and findings as to similarly situated noncitizens, and finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22. Accordingly, the Court

finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A). Petitioner's ongoing detention is therefore unlawful under the INA.

### D. Due Process

Petitioner also challenges his ongoing detention without a hearing and opportunity for release on as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2)(A) to apply to Petitioner, it would still have to contend with Petitioner's as applied due process challenge to detention under that section. See Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (On remand from the Supreme Court, remanding to the district court to determine in the first instance the minimum requirements of due process for noncitizens subject to prolonged mandatory detention authorized by § 1225(b)); id. ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so.")

The Court incorporates by reference the legal authorities and standards set forth in Escobar Salgado regarding the due process rights of noncitizens in Petitioner's position. 2025 WL 3205356, at *22-24. The Court further incorporates its finding that Respondents' continued reliance on Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020) to contend that all undocumented noncitizens present in this country have no right to due process under the Constitution is erroneous. 2025 WL 3205356, at *22-24; accord Arechiga v. Archambeault, No. 2-23-CV-00600-CDS-VCF, 2023 WL 5207589 (D. Nev. Aug. 11, 2023).

For the following reasons, the Court finds that Petitioner's prolonged and indefinite detention violates his procedural and substantive due process rights.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

1    Under Mathews, courts weigh the following three factors: (1) "the private interest that will
2    be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through
3    the procedures used, and the probable value, if any, of additional or substitute procedural
4    safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and
5    administrative burdens that the additional or substitute procedural requirement would entail."
6    Mathews, 424 U.S. at 335.

7    The first Mathews factor considers the private interest affected by the government's
8    ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424
9    U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental
10   of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is
11   the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also
12   Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged
13   detention is unquestionably substantial.") (citations omitted). Additionally, Petitioner's liberty
14   interest is not diminished by any final order of removal, or the availability of any existing process
15   to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas
16   petitioner's liberty interest was diminished by the fact that he was subject to a final order of
17   removal, had already been afforded an individualized bond hearing, and had additional process
18   available to him through a further bonding hearing before an IJ upon a showing of materially
19   changed circumstances).

20   Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest
21   through the procedures used, and the probable value, if any, of additional procedures." Mathews,
22   424 U.S. at 335. There are no existing procedures for Petitioner to challenge his detention without
23   bond pending the conclusion of his removal proceedings. The risk of erroneous deprivation is
24   extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable
25   discretion to detain Petitioner without any individualized evidentiary showing justifying his
26   detention, nor any process for Petitioner to challenge the exercise of that discretion.

27   The likelihood of erroneous deprivation caused by this lack of process is illustrated in this
28   case by the fact that an IJ denied Petitioner a bond hearing based on a finding that he was properly

- 10 -

subject to expedited removal, even though ICE itself acknowledged he had been present in the country since 2020. The procedures Petitioner was afforded were not sufficient for the immigration court to address that clear error by ICE and DHS. The record here thus reveals Petitioner's liberty has already been erroneously deprived, as Respondents concede through their silence on this issue in their Response. See ECF No. 14.

Further, Petitioner's ongoing detention has led to Respondents unlawfully attempting to remove him from the U.S. while his appeal of the immigration judge's decision granting him withholding of removal to Nicaragua and denying asylum remains pending before the BIA, and subject to further review by the Ninth Circuit. Removal "visits a great hardship on the individual and deprives him [or her] of the right to stay and live and work in this land of freedom." Bridges v. Wixon, 326 U.S. 135, 154 (1945). It is "a drastic measure" and for some "the equivalent of banishment or exile." Jordan v. De George, 341 U.S. 223, 231 (1951). The concern behind a noncitizen's right to due process in removal proceedings "is a familiar one—that personal freedom can only be preserved when there are institutional checks on arbitrary government action." Lanza v. Ashcroft, 389 F.3d 917, 927–28 (9th Cir. 2004). Respondents do not dispute Petitioner's attestation that ICE agents attempted to remove him in the middle of the night during the holidays with no notice to his counsel or his family, coerced him to sign a document that he could not understand while he was deprived the ability to communicate with counsel, and transferred him out of this district to be removed to Mexico, which is not his home country, without any process whatsoever. Respondents also do not dispute that they had no lawful authority to remove Petitioner from the U.S., nor assurances that there are any measures in places to ensure ICE agents will not attempt—whether erroneously, recklessly, or intentionally—to unlawfully remove him again.

Moreover, given that Petitioner has significant ties to the country based on his years of residence; the fact that his partner, who he intends to marry, is a lawful resident who has been granted asylum; the fact that his removal is not reasonably foreseeable given an immigration court's finding that he faces a serious risk of harm if returned to his home country; and that he has no criminal convictions and Respondents do not assert that he poses a danger to the public, the record before this Court demonstrates that Petitioner has been and continues to be erroneously

1  deprived of his liberty. Immigration detention is civil, not punitive, and the government's only
2  legitimate interests in holding an individual in immigration detention, at the expense of the federal
3  taxpayer, can be to prevent danger to the community or to ensure the noncitizen's appearance at an
4  immigration, *i.e.*, removal proceeding. See Zadvydas, 533 U.S. at 690. Because Respondents have
5  not asserted that he is dangerous or a flight risk, the Court finds that Petitioner's detention without
6  a bond hearing has already led to the arbitrary and erroneous deprivation of his liberty for nearly
7  eight months.

8  The additional procedures afforded under § 1226(a), including an individualized,
9  constitutionally adequate custody redetermination by an immigration judge, *i.e.*, a bond hearing,
10 substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those
11 procedures require the government to establish that Petitioner presents a flight risk or danger to
12 the community. This would account for the constitutional requirement that "once the flight risk
13 justification evaporates, the only special circumstance [ ] present is the alien's removable status
14 itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As
15 such, the second Mathews factor also weighs heavily in favor of finding Petitioner is entitled to
16 the procedural protections under § 1226(a).

17 The third and final Mathews factor considers the "Government's interest, including the
18 function involved and the fiscal and administrative burdens that the additional or substitute
19 procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
20 government's interests in enforcing immigration laws, including "protecting the public from
21 dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest
22 order." Rodriguez Diaz, 53 F.4th at 1188-89. But here, in failing to articulate any individualized
23 reason why detaining Petitioner serves those interests, the question arises "whether the detention
24 is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to
25 incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). Further,
26 limiting the use of detention to only those noncitizens who are dangerous or a flight risk through
27 existing bond procedures serves the government and public interest by *reducing* the fiscal and
28 administrative burdens attendant to immigration detention. See Hernandez v. Sessions, 872 F.3d

976, 996 (9th Cir. 2017) (Noting "the costs to the public of immigration detention are staggering" while "[s]upervised release programs cost much less by comparison.")

In sum, the Court finds that the Mathews factors weigh heavily in favor of Petitioner and that his detention without a hearing violates his procedural due process rights.

### 2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner's prolonged and indefinite detention violates his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### E.  Scope of Relief

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

This Court has found ordering a prompt bond hearing under § 1226(a) and its implementing regulations an appropriate remedy to unlawful detention under § 1225(b)(2)(A) in similar habeas proceedings. See, e.g., E.C. v. Noem, No. 2:25-cv-01789, 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025). However, in this case, the Court, in its equitable discretion, finds the unique harms suffered by Petitioner because of the government's violation of his due process rights require the remedy of immediate release from custody. See Brown v. Davenport, 596 U.S. 118, 127-28 (2022) (district courts have equitable discretion, "as law and justice require," for remedying unlawful detention in habeas proceedings). Petitioner was arrested by ICE in June 2025, based on pending misdemeanor charges for which he has been deprived his right to trial due to his immigration

1  detention. He was granted release from criminal custody and has already paid more than $3,000 in
2  bond. He was erroneously placed in expedited removal proceedings by Respondents despite their
3  acknowledgement that he has been present in the country since 2020, and thus cannot, by statute,
4  be deprived of the procedural protections of standard removal proceedings. He was denied a
5  constitutionally adequate bond hearing by the immigration court based on ICE unlawfully placing
6  him in expedited removal proceedings and classifying him as detained under § 1225(b)(1), which
7  was clear error given the fact that the document charging removability, which commenced
8  Petitioner's removal proceedings before the immigration court, alleged he entered the country five
9  years ago.

10  While in ICE custody, he was coerced to sign a document he could not understand,
11  deprived of his right to speak to his counsel, placed in inhumane conditions, and nearly illegally
12  removed from the U.S. by ICE agents despite, as Respondents concede, ICE having no authority
13  to remove him. This caused him severe mental distress as a survivor of persecution and torture by
14  Nicaraguan authorities who struggles with trauma related mental health symptoms. He has been
15  subjected to nearly eight months of arbitrary detention while Respondents have never articulated—
16  either in immigration court proceedings or in this Court—any individualized justification to
17  continue to detain him. "This is not what civil enforcement looks like in a humane system of
18  government under law. The Constitution does not permit such cruelty as a condition of civil
19  enforcement. It does not permit the government to strip people of dignity simply because they lack
20  lawful status." Aroca v. Mason, --- F.Supp.3d ---, No. 2:26-CV-00057, 2026 WL 357872, at *1
21  (S.D. W.Va. Feb. 9, 2026). Accordingly, the Court finds the egregious harms Petitioner has
22  suffered and continued to suffer in Respondents' custody can only be remedied by ordering
23  Petitioner's immediate release on his own recognizance.

### F. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Any fee petition should be filed within the deadlines and consistent with the requirements set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

### VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **IMMEDIATELY RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE**, and in any event no later than **5:00 p.m. TODAY February 12, 2026**.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) and its implementing regulations after a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from removing Petitioner from the United States without a final order of removal as defined by 8 U.S.C. § 1231.

**IT IS FURTHER ORDERED** that the parties shall fille a joint status report confirming Respondents' compliance with this Order by **February 13, 2026**.

**IT IS FURTHER ORDERED** that Petitioner's (ECF No. 2) Motion for Temporary Restraining Order and (ECF No. 16) Motion to Expedite are **DENIED as moot.**

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court will retain jurisdiction to enforce its order and judgment. Likewise, the Court retains jurisdiction to consider any request for attorney's fees and costs pursuant to 28 U.S.C. § 2412.

**DATED:** February 12, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**